The next case is number 221843, Kambis Anvar et al. v. Elizabeth K. Dwyer et al. At this time, would counsel for appellant please introduce himself on the record to begin? I'm James Tamper for the appellants. May it please the Court, I would like to reserve two minutes for rebuttal, if that's all right. You may. Two minutes. Thank you. The plaintiffs are challenging two features of Rhode Island law that discriminate against interstate commerce and protect Rhode Island wine retailers from competition. If this were any product other than alcohol, this could be struck down quickly because nondiscrimination is a central principle of the Commerce Clause, and of course, as I've said, little inquiry is required. But in Tennessee wine, the Supreme Court said, wait a minute, the 21st Amendment is also involved, so we need to do a different inquiry. But it also said the reverse. If this did not involve discrimination and protectionism, it could be easily upheld under the scope of the 21st Amendment. But Tennessee wine, as well as this Court and family winemakers, said the 21st Amendment itself is limited by the nondiscrimination principle of the Commerce Clause. So if we don't have strict scrutiny under the Commerce Clause and minimal scrutiny under the 21st Amendment, what's left? Some kind of intermediate scrutiny, one that takes both constitutional provisions into account. And this is what the Supreme Court has done. This sort of intermediate level of scrutiny, it is said, is fact-based. That is, there are sort of three central factual issues. Have the plaintiffs established that there's a discriminatory effect, an actual effect that protects the local businesses from competition? And has the state responded by showing that there is, that the ban is necessary to preserve a genuine public health and safety issue that cannot be protected by nondiscriminatory alternatives? Now, the Supreme Court twice, and this Court and family winemakers, has said that the reasonable nondiscriminatory alternative is a permit and regulatory system. This is how alcohol is generally regulated. And in all three of those cases, the Court struck down the law because of the absence of evidence from the state that this was necessary to protect public health and safety that could not have been protected in other ways. Now, in this case, the clearly plaintiffs have established. So is your gripe here with the district court's fact findings or the standard that they used in reviewing? The district court essentially engaged in no fact finding. It found, based on an interpretation of the issue from the Sixth Circuit case, that the case was controlled by the 21st Amendment. It gave no weight to the Commerce Clause part. And by looking at it as solely a 21st Amendment case, he did not even bother to analyze whether the state had shown any actual evidence of its burden to whether this advanced an interest. And neither in the district court nor in their briefs has the state yet to address the second half of their equation, which is what's wrong with a permit and regulatory system that they use for everything else and every other state uses? Well, I thought they put on evidence about the impact of the three-tier system on promoting public health, regulating alcohol in the sense that they can ensure that it's not tainted, that minors don't have access to it. I thought that was part of the record, which is why I was wondering if... Their record was not that any of these events have actually happened, that there's an actual effect. There are 44 states, including Rhode Island, that allow some forms of interstate direct wine shipping, mostly from wineries. There are 14 states that have allowed out-of-state retailers to do the direct shipping. There's plenty of data in the record from the federal government and from the state regulators saying that in their states, no such problems have arisen. The state's evidence was, but those problems might arise in the future. But in Tennessee wine and in family winemakers, both the Supreme Court and this circuit said, speculation about the future and assertions are not adequate. There must be evidence that this is an actual problem. If it were, you'd see it in other states, and they don't. Nowhere in their evidence did they address step two, which is if any of these problems were real potentials, why couldn't they be addressed through a permit regulatory reporting system? There is such a system out there. This circuit endorsed it in family winemakers. The Supreme Court has endorsed it twice in Granholm and Tennessee Wine, saying that the state regulatory system where you have to, where the shipper has to register the product, has to tell the state what it's doing, has to pay its taxes, has to use a service that guarantees that IDs will be checked, that that system is a reasonable alternative, unless the state could show for some reason why it wouldn't work. And they have not done so. Counsel, can I point out to you, to this point, you haven't distinguished between the two aspects of the system that you're challenging. I understand the argument that you're making with respect to the direct ship provision, but you kind of lump in, without any real differentiation, the common carrier provision. And I suggest to you that we have to analyze these two provisions separately, and the results of that analysis may be different as to each provision. So can you tell me what your case is on the common carrier provision? What's troubling me is there, I think you make an assertion, but it's not evidence-backed as far as I can see, that somehow the common carrier assertion, the common carrier provision, has the inevitable effect of discriminating against interstate commerce, but I don't see any evidentiary support for that position. The assertion is plausible, but don't you have a burden to back it up somehow? Yes, well, first of all, of course, the test is whether it has a discriminatory effect. Now, the home delivery is easier because that's facial, it's one-to-one. This is not. But that was the same issue, and I don't mean to dodge your question, that was the same issue that was raised in family winemakers where they had a 30,000-gallon-per-year production limit, and the court found that based on the record, looking at something like 95% of the wine was produced outside of Massachusetts in wineries that would not qualify. We've got the same evidence here. Ninety-five percent of the wine sold in the United States, approved by the Federal Tax and Trade Bureau and sold in the United States, is sold by retailers located too far from Rhode Island to use their own vehicles. How do we know what is too far from Rhode Island to use their own vehicles? Isn't that an evidentiary question? I think it is. Well, what evidence is there? I mean, I don't know. Is Springfield, Massachusetts too far from Rhode Island? Is Albany, New York too far from Rhode Island? I mean, I suppose we could assume that the Napa Valley might be too far, but it seems to me that there are a lot of other areas, New York, Pennsylvania, et cetera, where I wouldn't know whether it was practicable or not for a retailer to use its own vehicles. It would depend, I suppose, on how much quantity they could sell. Well, I would say two things. One is the expert report from Tom Wark, head of the National Association of Wine Retailers, does talk about the unequal distribution of a substantial number of these wines that they are sold primarily out of wineries, out of retailers, a lot of them in California. And he also says, as a general expert matter of familiarity, that this is beyond the economic feasibility of most retailers. It doesn't have to be against the economic feasibility of all retailers, and this court said that in the Family Wine Act. No, it has to be the dominant effect, though. Doesn't the dominant effect of the regulation have to be discriminatory? Yes, it has to be. The predominant effect has to be discriminatory in the sense of protecting local retailers from competition, and I believe that this court could even simply take judicial notice that even in New York City, that a retailer cannot afford to put four bottles in a truck and drive it to Rhode Island. So, and there is, the evidence is not strong on that point, but there's also a summary judgment in which we asserted that as a fact, gave the evidence we have, and there was not a shred of contrary evidence produced by the other side. I mean, we'll look at the factual record. The point that I'm making is the common carrier provision and the direct ship provision aren't necessarily going to stand or fall together. Correct. We've got to look at the evidence separately as to each provision. Yes, I agree completely, and I would also point out there that Rhode Island already allows out-of-state wineries to use common carriers. So it's the, if they had any evidence that this was, that the use of common carriers was any kind of threat of public safety, they'd know because they regulated and they had not come up with any, and they admitted in their discovery that the state had no evidence that there was any threat to minors or any threat of other public safety problems due to either of the two issues. But Judge Shelley, I definitely agree that they are two separate issues, but this court in family winemakers treated them by the same standard as a question of discriminatory effect. And so for the questions, I will save the rest of my time for my rebuttal. Thank you, counsel. At this time, would counsel for the appellee, Mr. Field, please introduce himself on the record to begin. Good morning, Your Honors. Michael Field for the State Defendants. I will address the concrete evidence component of the Tennessee wine test. My colleague, Ms. Skakel, will address the essential feature component, discrimination and other related arguments, if it pleases the court. In arranging these topics, we recognize that the court only has to reach the concrete evidence prong if the court first finds that there has been discrimination. You don't seriously dispute that there's a discriminatory effect in the, let's take the direct ship regulation. It's clear that that regulation treats out-of-state retailers different than in-state retailers. I think it does treat out-of-state and in-state. Whether it's justified or not is a different question. I think that's true, and I think Ms. Skakel will address most of that, Your Honor. I wanted to get first to the point of the common carrier exception. The plaintiff has repeatedly stated there's no concrete evidence, but there's concrete evidence that Rhode Island's ban, which is for all in-state and out-of-state retailers cannot use a common carrier to deliver to a Rhode Island consumer. There is concrete evidence in the record that that's a nondiscriminatory regulation. And concrete evidence among it is when one of the plaintiffs in this case, Ms. Drum, in this very case, asked, ordered wine from a New York retailer, had it shipped illegally into Rhode Island, and it was delivered by a common carrier. When the common carrier got to Ms. Drum's house, according to her testimony that was before the district court, she thinks that she was asked to sign something. She wasn't sure, but she thinks she was asked to sign something, and she testified that she was never asked for identification. No permit system will address that. Rhode Island law already requires that when alcohol is shipped, that it be face-to-face, and that the shipping person, the owner of the Class A retailer, check identification. That didn't happen in this case. There's a lot of other concrete evidence, too, but that's concrete evidence that Rhode Island's law provides. But that doesn't address an out-of-state purchase that can be shipped with a common carrier. If I'm visiting Massachusetts winery, and can buy there and have it shipped with a common carrier to my house,  there's two differences, Your Honor. Number one, when the Rhode Island resident purchases at the winery, that's a face-to-face transaction. The identification is checked at that point. Is it necessarily a face-to-face transaction? Yes, it is, Your Honor. Why can't I call the winery and tell them I want six bottles of rose, particular, you know, send it to me? Because Rhode Island law specifically says that the Rhode Island consumer has to be on the winery's premises, the manufacturer's premise, to order it, okay? And then it's shipped to the home. Secondly, wineries, as opposed to Class A retailers, are subject to a federal license. If the wineries violate the shipping laws, they risk their federal license to ship anywhere in the country. That's not so with Class A retailers. I know in their reply brief they brought up an argument. I thought the point you were making is that at the point of delivery, there's an ID check to make sure it's not delivered to a minor. You're buying wine from an out-of-state vineyard and having it shipped to Rhode Island by a common carrier. It's a different checkpoint. I understand that the in-person check in terms of the purchase itself, but the delivery, I thought you were arguing, has a different safety check purpose, which is to make sure minors don't wind up with it. That's correct, Your Honor. So how do you distinguish that between wine purchased out-of-state? Because, first of all, the wine that's purchased out-of-state avoids... You're right, they're made very well. If there was an out-of-state retailer who delivered it, they might check. First of all, with all due respect, I know they present two issues. This case is really about the common carrier, because in their brief, they even acknowledge that for all intents and purposes, an out-of-state retailer feasibly can't deliver to Rhode Island with their own employee. But taking your point, Your Honor, it still avoids other problems. It avoids the wholesaler tier incomplete. Matter of fact, wine or other alcohol would be coming into Rhode Island and not passing through any regulatory points in Rhode Island. It wouldn't be inspected by the wholesalers. It would avoid a Rhode Island wholesale tax, which is a consideration. It may not be the end of the day, but avoiding Rhode Island in 2020, I think it was, had $17 or $18 million in wholesale revenue. That goes back to the brother's question that you haven't addressed the fact that it's Rhode Island's choice not to set up a permit system, which would allow them to regulate out-of-state retailers and tax out-of-state retailers who chose to sell in Rhode Island. That's what other states do. First of all, Your Honor, I think when the plaintiff says other states do it, I think they've said 14. That's clearly not a, that's a minority. It may be a minority, but it's not an insignificant minority. It's pretty good proof that it's an available mechanism. Well, to your point, there's a couple of reasons, and they're in our briefs. I know I'm running out of time, but the permit system doesn't address the inspections. Wholesalers are inspected by DBR every year. They're inspected by DBR when they make their license application. That, and the DBR affidavit from the inspector notes that Rhode Island doesn't have the resources and probably the authority to do the outside inspections in all other 49 states. There's the point that alcohol comes to rest at the wholesaler. And if there's a problem, and this is provided in our briefs in the affidavits, in the expert reports, if there's a problem with alcohol, the 38 or 39 wholesalers that are in Rhode Island can track down that alcohol quite readily, as opposed to going through all of the retailers who have avoided the wholesale tier throughout the 49 states. It can be tracked readily. To Judge Thompson's point about the alcohol with minors and compliance checks that Rhode Island authorizes. So, I see that I've run out of time. If there are other questions, I'm happy to address them. Thank you. Thank you, counsel. At this time, if counsel for the Appley Responsible Beverage Alcohol Coalition can introduce herself on the record to begin. She has ten minutes. Good morning, your honors. Deborah Skakel for the Rhode Island Beverage Alcohol Responsible Coalition. Just, I'm going to try to follow up on all the questioning to Mr. Tanford and Mr. Field. And I think in that regard, maybe sort of a level set is a good idea. There are, the laws in place in Rhode Island are such that if a Rhode Island consumer travels to an out-of-state winery, makes an in-person purchase, that person can have the wine shipped back to Rhode Island by common carrier. So, you have an in-person purchase piece, and then a common carrier delivery. The other thing that happens in Rhode Island is that the retailer level, a retailer can accept, Judge Sellier, to your point, an online order or phone order, or it can be an in-person purchase. Doesn't have to be, but the delivery has to be in person. What the plaintiffs want is to cherry pick. They want an out-of-state retailer to be able to take an online order and ship by common carrier. That does not happen at all in Rhode Island. Excuse me, but if you set that kind of, if that kind of system was set in place, the state court as part of that system require also that that delivery only be made in person. But that is not what the plaintiffs want, Your Honor. It may be what the plaintiff wants, but what we're talking about is what the state can do. And if we were to say that the present scheme is not constitutionally valid, and your concern is the in-person delivery, the state, if it requires in-person delivery of in-state retailers, certainly could require in-state delivery, in-person delivery on the part of out-of-state retailers. I agree with you there, Your Honor, but the other hurdle that, why I say that's not what the plaintiffs want, one, practically speaking, they don't. I understand, Your Honor, you don't always get what you want, right? So I've been told. The other thing that happens here, Your Honor. I'm mushing one of my grandchildren. I feel your pain, Your Honor, yes, I do. Anyway, the other thing that gets in the way is Rhode Island's requirement that wine that's sold to a consumer in Rhode Island be purchased from a Rhode Island licensed wholesaler. My point, Your Honor, there is let's assume that the state changed the system, right? And they allowed for retailers to take online orders, but they still had to deliver in person. So we've got a retailer in New York, right? That retailer, under your new system, would be able to take an order from Your Honor in Providence and get a truck and deliver it to your home. But what Rhode Island would still say no can do, Judge Selya, is because that New York retailer would have to buy its wine from a Rhode Island wholesaler. And they don't want to do that, right? In fact, under their home license in New York, they can't do that. They have to buy from a New York wholesaler. So what I have to ask you is where is the concrete evidence in the concrete evidence, that's the Supreme Court's phrase, in this record that the wholesaler's involvement in that purchase is essential or necessary to Rhode Island's regulation of the alcoholic beverage market? Okay, Your Honor, I'm going to break that out just so I'm clear. And I like to call this constitutional analysis staying in your lane. So there's two issues here. One is, and I'm happy to answer both. If you want me to argue why the in-state wholesaler purchase requirement is an essential feature, right, that's an alternative approach to the 21st Amendment analysis. Happy to do that. I'm also happy to tell you where the concrete evidence is if we are in Tennessee wine direct inquiry approach, right? Okay, so that's where I'm going to go down Tennessee wine path. So the concrete evidence as to why the in-state wholesaler purchase requirement is an appropriate promotion of public health and safety is twofold. One in the evidence is the affidavit from the director at the ABC from Rhode Island, John Mancone, and he points out, and the district court cites this, cites to this in a footnote, notwithstanding what Mr. Tanford said that he didn't consider any evidence, as to all of the benefits that this statutory scheme provides. In addition to that, Your Honor, the wholesalers submitted a fair amount of evidence, including that the number of inspections that they have, if they don't allow DBR to come on site, they're susceptible to losing their license. In addition, we had... I understand that, but what I don't see, I don't mean to be rude, but you have a limited amount of time, what I don't see is any concrete evidence that allowing wine purchases from out-of-state retailers that don't go through Rhode Island wholesalers would cause some sort of problem for Rhode Island. There are some theoretical problems that evidence that this problem and that problem might arise, but there's no concrete evidence, for example, that in the 14 states that allow it, that there have been any problems to speak of. Your Honor, in that regard, let me answer it two ways. One, the wholesalers put in evidence that specifically showed that there were instances where the wholesalers had to get the wine back from retailers, and it was wine, because there was a problem with it. It was either unsafe, it was tainted, whatever. If we allow a retailer from a different state to bypass the Rhode Island wholesaler, and that wine is going directly to a consumer, we miss that, if you will, safety measure and that stop gate. And remember, Your Honor, Rhode Island also has what in jargon is called an at-rest law. So when the wine comes in from another state, from a manufacturer, it has to be at the wholesaler's premises for a certain number of hours before it can then go off to a retailer. During that period of time, Your Honor, it gives the wholesaler or the manufacturer, the producer for that, the vineyard for that matter, the ability to determine is this wine that is proper to be sold out through a retailer. And it also allows, because it's definitely a funnel, right? The wholesaler functions as a funnel. It also allows if the wine is sold through and there's a problem, they can easily get it back. Is it that the wholesalers somehow test this wine in some way? No, but they do get word from the manufacturer, Your Honor. That was in the affidavits from Mr. Mancini and Mr. Epstein. Yeah, they get word from the manufacturer. But I'm still wondering why the wholesaler is essential in this. Well, the Supreme Court has said that, as Your Honor may recall. The three-tier system is unquestionably legitimate. But they've also said that not everything that a state wants to do can be justified by saying, oh, it's part of the three-tier system. A three-tier system is basically set up to ensure that there is no economic vertical integration in the liquor industry to keep manufacturers, wholesalers, and retailers, to use your expression, to keep everybody in his or her lane, all right? And it doesn't seem to me that a requirement, an exception such as this, should Rhode Island grant it or should this court say it's constitutionally required, is going to have any discernible impact on the three-tier system, which is going to continue to function just fine. It'll have a significant impact, Your Honor. If, in fact, the plaintiffs get what they want and they, may I continue? Sure. And they eliminate the requirement that the wine doesn't have to come through a Rhode Island wholesaler. I mean, that is part of, that's another statute that the plaintiffs are challenging here. They try to create this euphemism that, you know, they're challenging the inability to, quote, make home deliveries. But home deliveries for an out-of-state retailer translates into taking an online order and delivering by common carrier. That is what they want to do. And my point to you, Judge Selye, is Rhode Island doesn't even allow direct shipping, in the pure sense, by an out-of-state winery, right? They make you have an in-person sale, which Your Honor may recall in Cherry Hill, Maine required that, and that was perfectly fine. No, I think that would be perfectly fine, you know? Right. So, and if I may, Your Honor, if you could indulge me, I will answer your other question, which is, well, there isn't any indication that the states that already allow out-of-state retailer shipping do have a problem. The difficulty there is that the purported, quote, federal data on which the plaintiffs have relied is dubious at best. This consists of- Federal data? What? No, how they're trying to use it, Your Honor, how they're trying to use it. So they take, you know, it's a 50-state statistical chart, and it shows if there's a U.S. average of, for example, how much consumption there is, and then there's another chart, how many traffic fatalities, right, that are purportedly linked to alcohol. So you've got all 50 states listed, and it's from, you know, low to high, in terms of how they rank in the country. And then they take the 14 states that purportedly allow out-of-state retail shipping, which two of them really don't, but let's give them the benefit of the doubt, and they literally just put a little star next to each of those 14. But it doesn't show a thing, Your Honor, because if you've got that U.S. average, which give or take is in the middle of the page, the line, they've got some of the states are above the line and some of the states are below the line. So there is no causative correlation that allowing out-of-state retail or shipping either helps you or hurts you when it comes to this, quote, federal data. That's why I say it doesn't prove anything. But maybe by showing that you can't tell whether it helps you or hurts you does help their case. Well, perhaps, Your Honor. Considering where the burden is. But talk about speculative. I mean, that is, you might as well just throw darts in terms of what the causative connection is. And then they also rely on Tom Warrick, their proffered expert. And the only thing that he says about out-of-state retailers and out-of-state winery, out-of-state direct shipping generally, is that the states safely regulate out-of-state shipping, and they safely monitor. What does he point to for that, Mr. Warrick? He just has a list of the states that have a permit system, and simply that, yes, and this is what the permit sometimes requires. There is no causative connection between Mr. Warrick saying, these are the states that have a permit, this is typically what's in a permit, to show that they, in fact, safely regulate and safely monitor. That's just an adjective or an adverb, excuse me, that he throws in there. And lastly, they rely on the letters from regulators that supposedly say, no problems here, nothing to look at. The problem with that is, one of them, the letter was about six weeks after they issued the first permit, so who knows what's happened since then. And another one said, well, you know, we do have direct shippers that don't report shipments. Well, if I were a state regulator, that wouldn't sit well with me. And lastly, the inquiries from plaintiff's counsel were, you know, have you had any problems? There wasn't a preliminary question, what have you done to determine if there are any problems? And I bet you dollars to donuts they didn't do anything. Your time is up. Counsel, that's been very helpful, but that was your third lastly. Yes. I get very passionate when I'm talking about direct shipment of wine, Your Honor. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself back on the record for his rebuttal? Yes, James Tanford for the Appellant. A couple of things. One is I would remind the Court that it is not our burden of proof, it's theirs. And, yes, there are weaknesses in our evidence, but they have no evidence to the contrary. Secondly, as to the essential role of the wholesalers, I point out that there's no such thing. This is a contrived argument. Rhode Island allows its wineries, its breweries, and its distillers to bypass the wholesaler. It allows out-of-state wineries to bypass the wholesaler. We're not talking about bootleggers running rum from the Caribbean. Everyone shipping an out-of-state winery, an out-of-state retailer, they are licensed, they are inspected, they are regulated in their home states. Indeed, we've argued a number of these cases, and every single state has argued that their own personal regulatory system is absolutely essential because they have the best. I mean, they're all claiming that, and the fact is this is all regulated. They allow other forms of alcohol to bypass wholesalers, so it cannot be essential in the sense that they are using it. As to the argument, one argument about the problem with using common carriers, that there was one instance in which our plaintiff admitted they didn't ask for ID. Ms. Drum is 70 years old. I don't believe that a responsible delivery driver would have needed to see her ID. Oh, one other thing in my last 15 seconds. There is evidence in the record that came up in that, that there are a number of retailers located in Connecticut and Massachusetts that would indeed deliver using their own vehicles into Rhode Island if allowed to do so. The overwhelming majority is too far away, but at least some are close enough to do that. Thank you. Thank you, counsel. That concludes argument in this case.